UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 18-23950-CIV-O'SULLIVAN

HYACINTH A. LEACH,

    Plaintiff,

vs.

ANDREW SAUL,
Commissioner of Social Security,

    Defendant.

_____/

# ORDER

THIS MATTER is before the Court on the Plaintiff's Brief in Support of Motion for Summary Judgment (DE #18, 03/04/2019) and the Defendant's Motion for Summary Judgment (DE #19, 04/02/2019). The plaintiff seeks reversal of the Social Security Administration's denial of Supplemental Security Income (hereinafter "SSI") Benefits. The complaint was filed pursuant to the Social Security Act, 42 U.S.C. §405(g) (hereinafter "Act") and is properly before the Court for judicial review of a final decision of the Commissioner of the Social Security Administration (hereinafter "SSA"). The matter was referred to the undersigned for entry of a judgment by Judge Ungaro on February 4, 2019. (DE #17, 2/4/19). Having carefully considered the filings and applicable law, the undersigned rules that the Administrative Law Judge's (hereinafter "ALJ") decision is upheld, that the Defendant's Motion for Summary Judgment (DE #19, 04/02/2019) is **GRANTED**, and that the Plaintiff's Motion for Summary Judgment (DE #18, 03/04/2019) is **DENIED**, in accordance with the following Order.

## PROCEDURAL HISTORY

On June 10, 2015, Hyacinth Leach ("the plaintiff") filed an application for Disability Insurance Benefits ("DIB") and SSI. (Tr. 15). The application was denied initially on August 12, 2015, and upon reconsideration on December 15, 2015. (Tr. 70, 107-08). An administrative hearing was held on November 13, 2017, where the plaintiff testified and was represented by counsel. (Tr. 35-62). A vocational expert ("VE") also testified at the hearing. (Tr. 58-62). On December 19, 2017, the ALJ issued a decision finding that the plaintiff was not disabled within the meaning of the Social Security Act from October 14, 2012, through the date of the decision. (Tr. 26). The ALJ's decision became final when the Appeals Council denied the plaintiff's request for review on August 3, 2018. (Tr. 1).

## FACTS

### I. Plaintiff's Background

The plaintiff was born in 1955 in Trinidad and Tobago. (Tr. 229). The plaintiff is a United States citizen and was 62 years old at the time of the ALJ's decision. (Tr. 29, 229). The plaintiff has high school education. (Tr. 41). The plaintiff is separated and has three children and five grandchildren. (Tr. 37-38). The plaintiff currently lives alone. (Tr. 38). The plaintiff was her mother's caregiver for over a decade until her mother passed away on May 3, 2017. (Tr. 38). The plaintiff alleges an onset date of October 14, 2012, arising out of carpal tunnel syndrome, migraines, a stroke, and a heart murmur. (Tr. 254). The plaintiff has not worked since that time, except as a babysitter for her grandson. (Tr. 40, 254).

The plaintiff previously worked as an office manager, property manager, event manager, telemarketer, server, and a medical biller/coder. (Tr. 268). As an office manager, the plaintiff sat

"at a desk, typing or working on a computer." (Tr. 274). The plaintiff reported that she spent eight to nine total hours sitting each day. (Id.) The plaintiff did not report having to lift anything as part of the office manager job. (Id.) As a property manager, the plaintiff was "on her feet monitoring employees while doing housekeeping." (Tr. 272). The plaintiff reported lifting boxes of toilet tissues and napkins for bathrooms. (Id.) The plaintiff's work history report indicates that she frequently lifted twenty-five pounds. (Id.) As an event manager, the plaintiff "maintained and managed housekeeping for Gulfstream Race Track." (Tr. 273). The plaintiff did not report having to lift anything as part of the event manager job. (Tr. 273). The plaintiff reported standing for eight hours per day, walking two to three hours a day, sitting for two hours per day, and climbing one to two hours per day while working as an event manager. (Id.)

## II.    Chronological Medical Evidence Prior to the ALJ Hearing

The plaintiff began feeling pain in her hands in 2008 and was diagnosed with carpal tunnel syndrome in 2012. (Tr. 348). The plaintiff was diagnosed at the Emergency Room and discharged with a wrist brace.[1] (Tr. 348). On January 31, 2013, the plaintiff underwent X-rays at Memorial Hospital Pembroke Urgent Care Center that showed a small calcified fragment at the base of her right index finger. (Tr. 413). The plaintiff's symptoms worsened with activity, but she took Tramadol and wore a hand splint that mediated the pain. (Tr. 385) During another visit to the emergency room at Memorial Hospital Urgent Care Center on December 22, 2014, the plaintiff complained of bilateral "numbing" hand pain. (Tr. 402). At a general checkup on October 5, 2015, at UHI CommunityCare Clinic, the plaintiff stated she had swelling and pain

---

[1] The record does not contain any medical records from the plaintiff's visit to an emergency room or her discharge from an emergency room in 2012. This information was gleaned from a Florida Health Division of Disability Determination exam of the plaintiff that occurred on August 1, 2015.

throughout her body along with her joint pain. (Tr. 385). On October 26, 2015, the plaintiff had an X-ray of both hands, at Medical Park Group with Dr. Grazie Christie, that suggested mild degenerative changes but no fractures, dislocations, or bone abnormalities. (Tr. 374). On July 18, 2016, another X-ray at Jackson Rehabilitation Hospital with Patrick Owens noted degenerative changes in the plaintiff's thumbs. (Tr. 417).

The plaintiff suffered two strokes, one in 1991 and one in 2001. (Tr. 348). At the disability examination, the plaintiff reported left side weakness and difficulty with her left leg. (Id.) The plaintiff said she had not had any physical therapy because she could not afford it and that she experienced difficulty bending and walking. (Id.) The plaintiff reported that she could not walk for more than 15 minutes but, did exercises at home. (Id.)

The plaintiff has a history of migraines since the time she was a child. (Id.) The plaintiff only took over the counter medication but kept the migraines under control by avoiding sunlight and other triggers. (Id.) The plaintiff indicated that she got nauseous and lost vision in one of her eyes when she experienced migraines. (Id.) The plaintiff claimed that she is unable to go into her yard because of the sun, but that she is not completely limited to indoor activities. (Tr. 348-49).

The plaintiff underwent a psychiatric evaluation at UHI CommunityCare Clinic with Dr. Saiqa Ismail on October 19, 2015. (Tr. 379). The plaintiff complained about a loss of sleep, loss of energy, and depression. (Tr. 380). The plaintiff was prescribed Celexa and advised to diet and exercise. (Tr. 382-83).

The plaintiff's disability examination demonstrated that the plaintiff did not suffer from heart murmurs. (Tr. 348). The plaintiff indicated that her neurologist told her that she had a murmur. (Id.)

**III.     Plaintiff's Hearing Testimony**

A hearing was held before an ALJ on November 13, 2017. (Tr. 33-63). The plaintiff testified at the hearing. (Tr. 37-58). The plaintiff indicated that she stopped working in October 2012 when she filed for disability insurance. (Tr. 48). The plaintiff was working as a server for a catering company at that time. (Tr. 49). The plaintiff stated that she damaged her right-hand by holding trays and pushing carts. (Id.) The plaintiff "didn't even realize it was happening" because she had lost feeling in her right hand. (Id.) The plaintiff described numbness in her fingers and pain through her wrist and shoulder. (Tr. 49). On a pain scale of one to ten, ten being excruciating, the plaintiff testified her pain was at a level twelve. (Tr. 51). The plaintiff stated she could not lift a gallon of milk without hugging it. (Tr. 49-50). The plaintiff is also unable to text or use a computer due to the pain. (Tr. 54).

The plaintiff also testified that her mother's death made her depression worse. (Tr. 55). The plaintiff stated that she cried all the time, that her migraines increased in frequency, and that she suffered panic attacks. (Tr. 55). The plaintiff takes Prozac,[2] which allows her to concentrate and be comfortable around other people. (Tr. 55).

When questioned about her prior role as an office manager, the plaintiff testified that she also acted as a property manager and an event manager at the same time. (Tr. 44-45). The plaintiff remarked that "most of my jobs were sitting jobs" and that there was "not much" lifting during her time as an office manager. (Tr. 44). The plaintiff testified that if any lifting that was "too, too heavy," she would "get the guys to do that." (Id.) The ALJ clarified that "from 2002 all

---

[2] Prozac is a synthetic compound which inhibits the uptake of serotonin in the brain and is taken to treat depression. Lexico, https://www.lexico.com/en/definition/prozac (last visited June 27, 2019).

the way to 2006 . . . you were, kind of, this office manager, property manager, event manager, and that . . . was . . . the sitting job that you did." (Tr. 47). The plaintiff indicated that was correct. (Id.) When the plaintiff's attorney asked her if there were any other duties or responsibilities that she had not described, the plaintiff indicated that she had described everything. (Tr. 48).

IV.   **The Vocational Expert's Testimony**

A Vocational Expert ("VE") testified during the ALJ hearing (Tr. 58-62). The ALJ posed the following hypothetical to the VE at the hearing:

> [L]et's assume a hypothetical individual of the claimant's age and education and with the past jobs you described. Further assume that this individual is limited to the light range, which is lifting 20 pounds occasionally, 10 pounds frequently; carrying and pushing/pulling the same; sitting, standing, or walking for six hours; frequent handling and fingering; occasional climbing ramps and stairs; no climbing ladders, ropes, or scaffolds; occasionally balancing; occasionally stooping; occasionally kneeling; occasionally crouching; occasionally crawling; cannot be exposed to unprotected heights; dangerous moving mechanical parts; and would have - - could only be exposed occasionally to vibration. The hypothetical individual would be off task no more than 5 percent in an eight-hour workday in addition to normal breaks. Can the hypothetical individual perform any of the past jobs?

(Tr. 60-61). The VE testified that a person in the above hypothetical could perform all of the plaintiff's past jobs with the "exception of the babysitter or child monitor." (Tr. 61). The VE further clarified that a person in the above hypothetical could perform the plaintiff's past jobs as an office manager and telemarketer. (Tr. 61). The VE testified that the plaintiff's description of her office manager job did not "exactly" match the office manager description in the DOT because the DOT "only refers to clerical stuff, and I understood this was for a cleaning company." (Tr. 60).

# THE ALJ'S DECISION MAKING PROCESS

"Disability" is defined as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 423(d)(1)(A) (2004); 20 C.F.R. § 404.1505 (2012). The impairment(s) must be severe, making the plaintiff "unable to do his previous work . . . or any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. § 423(d)(2)(A) (2004); 20 C.F.R. §§ 404.1505 (2012).

To determine whether the plaintiff is entitled to disability benefits, the ALJ must apply a five-step analysis. 20 C.F.R. §§ 404.1520(a)(4) (2012). The ALJ must first determine whether the plaintiff is presently employed or engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(I) (2012). If so, a finding of non-disability is made, and the inquiry ends. Id. Second, the ALJ must determine whether the plaintiff suffers from a severe impairment or a combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii) (2012). If the plaintiff does not, then a finding of non-disability is made, and the inquiry ends. Id.

Third, the ALJ compares the plaintiff's severe impairments to those listed in Appendix I to Subpart 404 of the Code of Federal Regulations. 20 C.F.R. § 404.1520(d) (2012), Subpart P, Appendix I. If the impairment meets or equals a listed impairment, disability is presumed, and benefits are awarded. Id. Fourth, the ALJ must determine whether the plaintiff has the "residual functional capacity" to perform his or her past relevant work. 20 C.F.R. § 404.1520 (e-f) (2012). "Residual functional capacity" (RFC) is defined as "the most you can do despite your limitations." 20 C.F.R § 404.1545(a)(1) (2012). The ALJ must consider "all relevant evidence,"

including medical evidence, the claimant's own testimony, and the observations of others. Id. Fifth, if the plaintiff cannot perform his or her past relevant work, the ALJ must decide if he or she can perform any other work in the national economy. 20 C.F.R. §404.1520(g) (2012).

## **THE ALJ'S FINDINGS**

On December 19, 2017, the ALJ found that the plaintiff was not disabled. (Tr. 26-27). The ALJ noted at step one that the plaintiff had not engaged in substantial gainful work since the date of her alleged onset, October 14, 2012. (Tr. 18). At step two, the ALJ found that the plaintiff had the following severe impairments: (1) carpal tunnel syndrome; (2) mild hand arthritis; (3) remote history of cerebral vascular accident; and (4) knee crepitus with presumed osteoarthritis. (Tr. 18). At step three, the ALJ concluded that the plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. 20). Specifically, the ALJ found that the plaintiff's hand and knee impairments do not satisfy Listing 1.02 for major joint function because the record did not reflect the impairments had resulted in an inability to perform fine and gross movements effectively. (Tr. 20).

The ALJ determined that the plaintiff was diagnosed with carpal tunnel syndrome based on her subjective symptoms and clinical examination findings. (Tr. 20). "[H]owever, [the plaintiff] failed to follow up on referral[]" appointments, preventing the plaintiff from attaining any objective measurement regarding her physical status. (Tr. 20). There was no evidence in the record that the plaintiff's carpal tunnel symptoms have resulted in the inability to stand from a seated position, balance while walking, or use her upper extremities. (Tr. 20). Furthermore, the evidence failed to demonstrate a "marked" limitation on physical functioning, or a "marked"

limitation in the plaintiff's ability to understand, remember, or apply information. (Tr. 20). Although she exhibited slightly diminished grip strength on examination, the plaintiff retained the ability to cook, clean, and perform her self-care activities. (Tr. 20).

The ALJ determined that the plaintiff had the RFC to perform sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a). (Tr. 21). However, the ALJ further determined that the plaintiff can only occasionally climb ramps and stairs, never climb ladders, ropes, or scaffolds, and occasionally balance, stoop, kneel, crouch, and crawl. (Tr. 21). The ALJ found that the plaintiff can frequently reach, handle, finger, and operate hand controls, but can never be exposed to unprotected heights or dangerous moving mechanical parts. (Tr. 21). Additionally, the ALJ found that the plaintiff can tolerate occasional exposure to vibrations but requires freedom to be off-task for up to five percent of an eight-hour workday in addition to normal breaks. (Tr. 21). Reaching step four, the ALJ found that the plaintiff can perform past relevant work as an office manager because the role did not require the performance of work-related activities precluded by the claimant's RFC. (Tr. 26). Because the plaintiff could perform past relevant work as an Office Manager, the ALJ found that she was not disabled (Tr. 26).

## **STANDARD OF REVIEW**

The Court must determine if it is appropriate to grant either party's motion for summary judgment. Judicial review of the factual findings in disability cases is limited to determining whether the record contains substantial evidence to support the ALJ's findings and whether the correct legal standards were applied. 42 U.S.C. § 405(g) (2019); see also Wolfe v. Chater, 86 F.3d 1072, 1076 (11th Cir. 1996) (holding that the reviewing court must not reweigh evidence or substitute its discretion). Decisions made by the Commissioner of Social Security are conclusive

if supported by substantial evidence and if the correct legal standard was applied. 42 U.S.C § 405(g) (2019); Kelley v. Apfel, 185 F.3d 1211, 1213 (11th Cir. 1999). Substantial evidence means relevant evidence a reasonable person would accept as adequate to support the ALJ's conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971). Substantial evidence is more than a scintilla but less than a preponderance. Richardson, 402 U.S. at 401; Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). To determine whether substantial evidence exists, "the court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995).

The restrictive standard of review, however, applies only to findings of fact. No presumption of validity attaches to the Commissioner's conclusions of law, including the determination of the proper standard to be applied in reviewing claims. See Cornelius v. Sullivan, 936 F.2d 1143, 1145-46 (11th Cir. 1991) ("The Secretary's failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal."); accord Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).

The reviewing court must be satisfied that the decision of the Commissioner is grounded in the proper application of the appropriate legal standards. See Davis v. Shalala, 985 F.2d 528, 531 (11th Cir. 1993). The court may not, however, decide facts anew, reweigh evidence, or substitute its judgment for that of the ALJ. See Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996). Even if the evidence weighs against the Commissioner's decision, the reviewing court must affirm if the decision is supported by substantial evidence. Id.; see also Baker v. Sullivan, 880 F.2d 319, 321 (11th Cir. 1989). Factual evidence is presumed valid, but the legal standard

applied is not. See Martin, 894 F.2d at 1529. The Commissioner must apply the correct legal standard with enough reasoning to avoid reversal. Id.

## **ANALYSIS**

The plaintiff contends that the ALJ's decision was contrary to law. (Pl.'s Mem. at 1 (DE #18, 03/04/2019)). Specifically, the plaintiff argues that the ALJ should have resolved step 4 in the plaintiff's favor. Id. In support of this contention, the plaintiff asserts that the ALJ's RFC finding prohibits the plaintiff from working as an office manager. Id. The plaintiff also asserts that the ALJ erroneously found she could perform her past work as an office manager because, under the regulations, there is no such thing as a composite job "as generally performed." Id. The plaintiff asks that this court reverse the Commissioner's final decision and remand for a rehearing. (Pl.'s Mem. at 11 (DE #18, 03/04/2019)). The ALJ's finding that the plaintiff can do her past work as an office manager was supported by substantial evidence and consistent with the RFC.

### **I. Proper RFC Finding.**

If the ALJ cannot determine whether a claimant is disabled at one of the first three steps of the sequential evaluation process, the ALJ next evaluates the RFC together with the claimant's vocational background to determine if the claimant can perform any past work. See 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1560(a). The ALJ may rely on several sources of information to determine the claimant's RFC. See 20 C.F.R. § 404.1560(b)(2). Direct testimony from the plaintiff about his/her past work, or others who may be familiar with the plaintiff's work, may be considered. Id. The ALJ may also rely on the services of a VE or the Dictionary of Occupational Titles ("DOT") to obtain relevant evidence. Id.

A VE's testimony constitutes substantial evidence supporting the ALJ's decision. See McSwain v. Bowen, 814 F.2d 617, 619-20 (11th Cir. 1987). In McSwain the plaintiff argued that the Secretary had erroneously concluded he could perform "other work" that existed in the national economy. Id. Specifically, the plaintiff contended that the VE's testimony did not constitute substantial evidence because it was premised on an improper hypothetical posed by the ALJ. Id. at 620. The court held that if the VE was present during the hearing, examined all written evidence presented, and responded to an accurate hypothetical from the ALJ, and the testimony constituted substantial evidence supporting the Commissioner's decision. Id.

Here, the ALJ determined the plaintiff's RFC based on a consideration of the entire record. (Tr. 21). The ALJ determined that the plaintiff could occasionally climb ramps and stairs, never climb ropes, ladders or scaffolds, and occasionally balance, stoop, kneel, crouch, and crawl. (Tr. 21). The ALJ further determined that the plaintiff can frequently reach, handle, finger, and operate hand controls, but can never be exposed to unprotected heights or moving parts. (Tr. 21). The ALJ posed a hypothetical to the VE enumerating each of these limitations. (Tr. 60). The VE determined that a hypothetical individual of a similar age and education as the plaintiff, together with the plaintiff's work history and relevant limitations, could perform all the plaintiff's past jobs except for babysitter and child monitor. (Tr. 61). The ALJ's finding that the plaintiff could perform her past role as an office manager was supported by substantial evidence.

The plaintiff seeks to cast her role of "office manager" as a composite role made up of three different positions: office manager, property manager, and event manager. (Pl.'s Mem. at 5 (DE #18, 03/04/2019)). A composite job is defined as one that has "'significant elements of two or more occupations and, as such, [has] no counterpart in the DOT.'" Smith v. Commissioner of Social Security, 743 Fed.Appx. 951, 954 (2018) (quoting SSR 82-61 at *2). According to the

12

Smith case, when a "claimant's previous work qualifies as a composite job, the ALJ must consider the particular facts of the individual case to consider whether the claimant can perform his previous work as actually performed." Id. Two of the three positions that the plaintiff claims comprised her allegedly composite job, involved physical requirements, some of which are at odds with the plaintiff's RFC as determined by the ALJ. (Tr. 269-71). The VE's testimony, however, undermines the plaintiff's argument. The VE testified that the plaintiff's office manager role did not exactly fit the DOT description, but that it would still be sedentary and skilled. (Tr. 60). The plaintiff's testimony during the hearing that most of her jobs were sitting jobs, and the description of the office manager job in her work history report, reaffirmed that her office manager job was a sitting job. (Tr. 44-45, 274). In her work history report, the plaintiff indicated that she sat at a desk for 8-9 hours per day and did not have to lift anything. (Tr. 274). The ALJ's finding that the plaintiff could perform her office manager job is consistent with the plaintiff's own testimony and the evidence in the record.

## II. Substantial Evidence Supports the ALJ's Determination that the Plaintiff's Past Relevant Work Does Not Qualify as a Composite Job, and the Plaintiff Could Perform Her Past Role of an Office Manager.

Claimants are not disabled when they retain the RFC to perform the functional duties of a past job either as they were actually performed or as they are generally performed in the national economy. See SSR 82-61; 20 C.F.R. §404.1560(b) (2012). One may rely on the DOT to define the functional duties of a position as it is usually performed in the national economy. Id. In some instances, the former position of a claimant may have involved functional demands in excess of those generally required for the job by other employers in the national economy. Id. If the claimant cannot perform the excessive functions and or job duties actually required in the former

job but can perform the functional duties and job demands as generally required by employers throughout the national economy, a finding of "not disabled" is appropriate. Id.

Claimants bear the burden of proving they can no longer perform past relevant work. See Jackson v. Bowen, 801 F.2d 1291, 1293 (11th Cir. 1986). In Jackson, the claimant argued the ALJ erred in finding he could perform his past relevant work as a belt link operator. Id. The ALJ found the claimant was restricted in climbing and descending stairs, and his job at the pipe manufacturing factory required him to climb/descend stairs. Id. Nevertheless, the ALJ held that he could perform his past relevant work as a belt link operator. Id. The Eleventh Circuit affirmed, holding that a claimant's burden is to demonstrate an inability to return to the previous *type* of work he was engaged in before. Id. at 1293-94. Although he showed that he could not perform his past job as a belt link operator at the pipe manufacturing factory where he was previously employed, the claimant failed to demonstrate he could not perform such jobs in general because he did not show that climbing and descending stairs is generally a requirement of such jobs. Id. Because he failed to make this showing, the court held that the claimant did not meet his burden of proving he could no longer perform past relevant work. Id. at 1293.

Here, the plaintiff argues that the ALJ was prohibited by the Agency's own rules from finding a claimant can return to past relevant work as generally performed when that job was a composite job. (Pl.'s Mem. at 9 (DE #18, 03/04/2019)). The plaintiff asserts that because a composite job requires multiple DOT occupations, it does not have a direct counterpart in the DOT, and it cannot be evaluated as part of a step 4 analysis considering work "as generally performed." See POMS DI 25005.020. The plaintiff contends that because her office manager position was a composite job, the ALJ erred in finding she could perform the position as it is generally performed in the national economy. (Pl.s Mem. at 8 (DE #18, 03/04/2019). A

14

composite job has elements of two or more jobs and has no counterpart in the DOT. See Smith, 743 Fed.Appx. at 954. "Past relevant work may qualify as a composite job 'if it takes multiple DOT occupations to locate the main duties of the [past relevant work] as described by the claimant.'" Smith, 743 Fed.Appx. at 954 (citing Program Operations Manual System ("POMS") DI 25005.020). It is not enough for the claimant to show that he cannot perform the demands and duties involved in the job but instead, he must show that he cannot perform the functional demands and job duties of the same position as generally required by employers in the national economy. Id.

There is substantial evidence in the record that the office manager position is not a composite job. In her work history report, the plaintiff lists office manager, property manager, and event manager as separate positions with distinct responsibilities. (Tr. 268-73). The plaintiff reported that she was an office manager from 2001-2002, a property manager from 2004-2005, and an event manager from 2005-2006. (Tr. 268). The undersigned finds that finite beginning and end dates constitute substantial evidence supporting the ALJ's determination that the jobs were performed separately from one another.

During her testimony before the ALJ, the plaintiff stated that most of her jobs were "sitting jobs." (Tr. 44). Describing her office manager role, the plaintiff stated there was "not much lifting" and that if boxes were too heavy, she would "get the guys" to lift those boxes. (Tr. 44). The plaintiff further stated that she was doing both office management and event management for the same company. (Tr. 45). When the ALJ opined that the office manager position was actually "kind of, this office manager, property manager, event manager" job and that the position was a "sedentary job," the plaintiff answered, "[y]es." (Tr. 47). When the plaintiff's attorney asked her if she had missed any duties or responsibilities in her role as a

"property office manager," the plaintiff responded that she did not and indicated she covered it all. (Tr. 48). The undersigned finds that plaintiff's testimony constitutes substantial evidence that her office manager position was sedentary.

The VE testified that the plaintiff's office manager job "does not exactly match the office manager description in the DOT because . . . the DOT description refers only to clerical stuff." (Tr. 60). The plaintiff contends that this statement demonstrates that her office manager position was a composite job. However, the VE testified that the plaintiff's office manager position, as described by the plaintiff, was only "slightly different" from the DOT description of an office manager job. Id. The VE did not classify the plaintiff's position as one that was so different that it required multiple DOT descriptions to adequately capture the plaintiff's responsibilities during her prior employment. (See id.). Reading the testimony as the plaintiff asks this court to do would require this court to reweigh evidence and substitute its own judgment for that of the ALJ, which is forbidden under the standard of review. See Miles, 84 F.3d at 1400.

The record reflects that the plaintiff's office manager job may have included elements of a property manager and/or an events manager. However, like in Jackson, the plaintiff bears the burden of showing both that she cannot perform the actual office manager role she held *and* that she is unable to perform the role of office manager as it is generally performed in the national economy. See Jackson, 801 F.2d at 1293-94. The plaintiff has failed meet to her burden in showing the latter. The VE's testimony, the plaintiff's work history report and testimony constitute substantial evidence that the plaintiff's office manager position was not a composite job and the correct legal standard was applied at step four.

**RULING**

In accordance with the foregoing Order, it is **ORDERED AND ADJUDGED** that the decision of the Commissioner is **AFFIRMED**, the Defendant's Motion for Summary Judgment (DE #19, 04/02/2019) is **GRANTED**, and the Plaintiff's Motion for Summary Judgment (DE #18, 03/04/2019) is **DENIED**.

DONE AND ORDERED at the United States Courthouse, Miami, Florida this 16th day of August 2019.

_____
JOHN J. O'SULLIVAN
CHIEF UNITED STATES MAGISTRATE JUDGE